## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMELIE NGAMBY,                          *

    *Plaintiff*,                        *

v.                                      *          Civil Action No. RDB-23-3185

MANOR CARE OF POTOMAC MD,               *
LLC, *D/B/A* PROMEDICA SKILLED
NURSING AND REHABILITATION,             *

    *Defendant*.                        *

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## <u>MEMORANDUM OPINION</u>

Plaintiff Amelie Ngamby ("Plaintiff" or "Ngamby") brings this action against Defendant Manor Care of Potomac MD, LLC, D/B/A ProMedica Skilled Nursing and Rehabilitation ("Defendant" or "Manor Care of Potomac"), alleging claims of national origin discrimination, retaliation, and harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code, State Gov't § 20-601 *et. seq.* (ECF No. 1 ¶ 1; ECF No. 17-1 at 5.) Currently pending before this Court is Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings (ECF No. 14). Plaintiff has responded in opposition (ECF No. 17), and Defendant replied (ECF No. 18). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings (ECF No. 14) is GRANTED. Specifically, this matter will be STAYED while the parties litigate their claims and defenses against each other before an

arbitrator.

## BACKGROUND

### I.      Relevant Background on Parties

From November 9, 2020 to late July 2022,[1] Plaintiff Amelie Ngamby, a native of Cameroon, worked as an at-will employee at Defendant Manor Care of Potomac MD, LLC as a Geriatric Nurse Assistant. (ECF No. 1 ¶¶ 9–10.) ProMedica Health System, Inc. owns HCR ManorCare, Inc. ("HCR ManorCare"), which is the indirect parent company for the Defendant Manor Care of Potomac. (ECF No. 14-2 ¶ 3.) HCR ManorCare is also the indirect parent company of ProMedica Employment Services, LLC, ("ProMedica Employment"), who until December 20, 2021 had been named Heartland Employment Services, LLC ("Heartland"). (*Id.* at ¶¶ 4–5.) Heartland—now ProMedica Employment—utilizes HCR ManorCare University ("HCR University") to have employees train, review policies, and enter into employment-related agreements. (*Id.* ¶ 6.) Accessing HCR University requires a unique username and password, the sharing of which would constitute a violation of Company policy. (*Id.* ¶¶ 9–10.)

### II.      Arbitration Agreement Process

Beginning in September 2016, Heartland began offering a voluntary Mutual Agreement to Arbitrate Claims ("Arbitration Agreement" or "Agreement") to its employees. (ECF No. 14-2 ¶ 12.) The Agreement appears as a separate course in HCR University named Mutual Agreement to Arbitrate Claims. (*Id.* ¶ 13.) Once an employee launches the program, there are

---

[1] Defendant identifies July 22, 2022 as the date of Ngamby's termination, rather than July 27, 2022, as Plaintiff alleges in her Complaint. (ECF No. 14-2 ¶ 7; ECF No. 1 ¶10.)

a series of slides that describe what arbitration is and notify the employee that their ability to opt-out is defined within the Agreement. (ECF No. 14-3 at 2–12.) A full copy of the Arbitration Agreement follows the slides. (ECF No. 14-2 ¶ 13.) An employee may take as much time as they desire to review the slides and agreement at any computer in the office, or they may request a printed version to take home. (*Id.* ¶ 14; ECF No. 14-3 at 11.)

Only after reviewing the Arbitration Agreement (the details of which are discussed below) can the employee mark the Arbitration Agreement as complete. (ECF No. 14-2 ¶ 17.) When marked completed, a new window gives the employee the option to "Acknowledge" or "Cancel" after seeing the following message:

> By clicking the "Acknowledge" button below, a) you acknowledge you have received and read the Mutual Agreement to Arbitrate Claims, b) you accept and agree to the terms of the Mutual Agreement to Arbitrate Claims; and c) you agree to using an electronic signature to accept and agree to the Mutual Agreement to Arbitrate Claims and that clicking on the "Acknowledge" button is as legally binding as an ink signature.

(ECF No. 14-4.) However, the Arbitration Agreement allows employees to opt out of the Agreement by sending an email within fourteen days of completing the module. (ECF No. 14-3 at 15–16 ¶ 8.)

### III.   Arbitration Agreement Details

The Arbitration Agreement states in relevant part:

> This Mutual Agreement to Arbitrate Claims ("Agreement") is between you ("you" or "Employee") and Heartland Employment Services, L.L.C. ("EMPLOYER"). Any reference to EMPLOYER also includes its parent companies, subsidiaries, divisions, related companies, affiliates, and all successors and assigns of any of them. . . . UNLESS **YOU CHOOSE TO OPT OUT OF THE AGREEMENT IN ACCORDANCE WITH SECTION 8 BELOW, YOU AND THE COMPANY MUTUALLY AGREE THAT ALL DISPUTES COVERED BY THIS AGREEMENT SHALL BE DECIDED BY AN ARBITRATOR THROUGH**

**ARBITRATION AND NOT BY WAY OF COURT, JURY TRIAL, OR ANY OTHER ADJUDICATORY PROCEEDING.**

1. **Covered Claims/Disputes.** Except as otherwise provided in this Agreement, this Agreement applies to any and all disputes, past, present or future, that may arise between Employee and EMPLOYER, including without limitation any dispute arising out of or related to Employee's application for employment, employment, and/or separation of employment with EMPLOYER, and this Agreement survives after the employment relationship terminates. This Agreement applies to a covered dispute that EMPLOYER may have against Employee or that Employee may have against EMPLOYER or its officers, directors, members, owners, employees, managers, agents, and attorneys.

The only claims subject to arbitration are those that, in the absence of this Agreement, could be brought under applicable law. Unless the claim is expressly excluded below, this Agreement applies, without limitation, to claims based upon or related to defamation (including post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, personal injury, emotional distress, breach of fiduciary duty, trade secrets, unfair competition, wages or other compensation claimed to be owed, meals and rest periods, termination, discrimination, harassment, retaliation, seating, tort claims, equitable claims, and all statutory and common law claims.

. . .

8. **Opting Out of the Agreement.** This Agreement is not a mandatory condition of employment. If Employee does not wish to be bound by this Agreement, he/she must send an email to the following email address: EmployeeArbitrationOptOut@hcr-manorcare.com, within fourteen (14) days of agreeing to the terms of this Agreement. In that email, Employee should provide his/her first and last name and state that he/she is opting out of this Agreement. If Employee timely opts out as provided in this section, Employee will not be subject to any adverse employment action as a consequence of that decision, and neither Employee nor EMPLOYER will be bound by this Agreement. Should Employee not opt out of this Agreement within fourteen (14) days, both Employee and EMPLOYER will be required to arbitrate all claims and disputes covered by this Agreement in accordance with its terms. Employee has the right to consult with counsel of his/her choice concerning this Agreement.

(ECF No. 14-3 at 13, 15–16 (emphasis in original).)

## IV.    Ngamby's Agreement and Subsequent Complaint

Ngamby started the Mutual Agreement to Arbitrate Claims course on March 28, 2021 and completed it that same evening at 8:35 p.m., which would have required her to click the "Acknowledge" button discussed *supra*. (ECF No. 14-5.) While Ngamby claims to "believe" she opted out (ECF No. 17-2 ¶ 6), she never presents any evidence that she followed the opt-out procedure, nor does she claim to have actually opted-out. (*See generally* ECF No. 17-1.)

On November 21, 2023, well over one year after her termination, Plaintiff initiated the instant action, alleging discrimination due to her Cameroonian nationality (ECF No. 1 ¶ 9), retaliation, and harassment in violation of Title VII and MFEPA. (*Id.* at ¶ 1; ECF No. 17-1 at 5.) In sum, Ngamby alleges unreasonable work expectations (ECF No. 1 ¶ 14), undue criticism (*id.* ¶ 16), and degrading comments. (*Id.* ¶¶ 17–18.) Ngamby alleges that when management learned of the incident, they terminated her rather than address her complaints. (*Id.* ¶ 27.)

Manor Care of Potomac has moved to compel arbitration, pursuant to the Arbitration Agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to dismiss the case or otherwise stay proceedings pending arbitration. (ECF No. 14.) In opposition, Ngamby argues that she never entered into a valid and enforceable contract with the Defendant, that Defendant was not a party to the contract, and that the defenses of lack of capacity, fraud, and mutual mistake apply so as to render any agreement unenforceable. (ECF No. 17.) Defendant's Motion to Compel Arbitration (ECF No. 14) is ripe for review.

## STANDARD OF REVIEW

### I.    Motion to Compel Arbitration

Defendant has filed the pending Motion to Compel Arbitration (ECF No. 14) pursuant

to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Although motions to compel arbitration "exist in the netherworld between a motion to dismiss and a motion for summary judgment," the decision to treat a motion to compel as one or the other "turns on whether the court must consider documents outside the pleadings." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Because the Arbitration Agreement is not integral to the Complaint, and thus the Court must consider the agreement itself as extrinsic evidence, the Court construes the Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings (ECF No. 14) as a motion for summary judgment. *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) ("Treating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered."). As this Court has previously noted, under Federal Rule of Civil Procedure 56(a), "motions to compel arbitration shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Progressive Leasing*, No. RDB-17-1249, 2017 U.S. Dist. LEXIS 176515, at *2 (D. Md. Oct. 25, 2017) (citing FED. R. CIV. P. 56(a); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251–52 (D. Md. 2011)).

Although the Fourth Circuit has characterized the standard of review on a Motion to Compel Arbitration as "*akin to* the burden on summary judgment," the pending motion will not be converted to or treated as a motion for summary judgment. On the contrary, the remedies available to a defendant moving to compel arbitration are limited to a stay or dismissal of the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to

stay judicial proceedings involving issues covered by written arbitration agreements [citing 9 U.S.C. § 3] . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. [citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)].")

The standard of review on a Motion to Compel Arbitration pursuant to the FAA is "'akin to the burden on summary judgment.'" *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). Therefore, motions to compel arbitration "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Rose*, 816 F. Supp. 2d at 251–52.

## II.     The Federal Arbitration Act

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)). The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("This text reflects the overarching principle that arbitration is a matter of contract." (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010))). Arbitration agreements "may be invalidated by generally applicable contract defenses, such as

fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 364 (2011) (internal citation omitted). The FAA also requires that a federal court stay any proceedings that present a controversy which the parties have agreed to arbitrate. 9 U.S.C. § 3. Moreover, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Despite this presumption, agreements to arbitrate are fundamentally about private choice. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Federal courts have the authority to compel arbitration, but in making that determination this Court is mindful that its role is limited to determining the "question of arbitrability," or the "gateway dispute about whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

The United States Court of Appeals for the Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the

[opposing party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001). State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). In Maryland, "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988). As this case involves the issue of the validity of the arbitration agreement and because the parties appear to concede that the contract was entered into by the parties in Maryland, Maryland law governs.

### III.    Applicable Maryland Law

Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract. *Hill*, 412 F.3d at 543. To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision. *Id.* As with any contract, the arbitration provision must be supported by adequate consideration in order to be valid and enforceable. *See Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003).

### ANALYSIS

Through its Motion (ECF No. 14), Manor Care of Potomac moves this Court to compel Ngamby to arbitrate her claims pursuant to the terms of the Arbitration Agreement, in accordance with the FAA, and to dismiss or stay the proceedings pending arbitration. Manor Care of Potomac asserts that Ngamby is precluded from litigating her claims before this Court

because she is a party to a valid and enforceable arbitration agreement agreeing to arbitrate "any and all disputes, past, present, or future" that Plaintiff has with Defendant, including claims of "discrimination, harassment, [or] retaliation." (ECF No. 14-3 at 13 ¶ 1.) In opposition, Ngamby insists that there was no agreement or consideration necessary for the contract; and that if there was, Defendant was not a party to the contract and further asserts the defenses of lack of capacity, fraud, and mutual mistake apply so as to render any agreement unenforceable. (ECF No. 17-1 at 15, 17; ECF No. 17-2 ¶¶ 2–3, 22.)

Of the four elements listed in *Whiteside* as necessary to compel arbitration, only the second—"a written agreement that includes an arbitration provision which purports to cover the dispute"—is in question here. *Whiteside*, 940 F.2d at 102; (*see* ECF No. 17-2.) This Court finds that the parties entered into a valid arbitration agreement; Defendant Manor Care of Potomac MD, LLC is a party to the arbitration agreement; and the various defenses advanced by Plaintiff do not apply. Accordingly, Defendant's Motion to Compel Arbitration and to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 14) is GRANTED.

## I.     Defendant Manor Care of Potomac Is a Party to the Arbitration Agreement.

This Court is unpersuaded by Plaintiff's argument that Defendant Manor Care of Potomac is not a party to the arbitration agreement. Plaintiff contends that the singular and undefined use of the word "Company" in the preamble makes this entire agreement irrelevant. (ECF No. 17-2 ¶ 22.) While it is true that the agreement never defines Company, the remainder of the agreement refers to "EMPLOYER," including the first sentence of the preamble which states "This [Agreement] is between you ('you' or 'Employee') and Heartland Employment Services L.L.C. ('Employer')." (ECF No. 14-3 at 13 ¶ 1; *see* ECF No. 14-3 at 13–16.) The next

sentence defines EMPLOYER to "include its parent companies, subsidiaries, division, related companies, affiliates, and all successors and assigns of any of them." (ECF No. 14-3 at 13 ¶ 1.)

Heartland Employment Services, which became ProMedica Employment on December 20, 2021, (ECF No. 14-2 ¶ 3), is an indirect subsidiary to HCR ManorCare, whose other subsidiaries include Defendant Manor Care of Potomac MD, LCC. (ECF No. 14-2 ¶ 3.) These two subsidiaries of HCR Manor Care: Heartland Employment Services and Defendant are clearly related companies or affiliates given their common parent company. This relationship did not change despite the 2021 name change to ProMedica Employment. Therefore, it is clear that Defendant Manor Care of Potomac was—and remains—a sufficiently related company or affiliate to Heartland Employment Services (now ProMedica Employment) that the term EMPLOYER as defined in the arbitration agreement applies to the Defendant.

## II. The Parties Entered into a Valid Arbitration Agreement.

The FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citing 9 U.S.C § 2). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Techs., Inc.*, 475 U.S. at 648–49. State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill*, 412 F.3d at 543.

Here, Defendant alleges—and Plaintiff does not dispute—that Ngamby completed a course named Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") on March 28, 2021. (ECF No. 14-1 at 11; ECF No. 14-5.) Completing this course required

Ngamby to login with her personal username and password, read a slideshow presentation that explains the basics of the arbitration process and the agreement, and then review the Arbitration Agreement. (ECF No. 14-2 ¶¶ 9–13.) Only after reviewing the Arbitration Agreement could Ngamby mark the section as complete. (*Id.* at ¶ 17.) After marking the section as complete, Ngamby was asked to acknowledge or cancel that she has read and accepted the terms of the Arbitration Agreement, and that she agrees that clicking "Acknowledge" legally binds her as much as an ink signature. (*Id.* at ¶ 18; ECF No. 14-4.) An employee like Ngamby has the option to not agree to the Arbitration Agreement by selecting the cancel button or by sending an email within fourteen days of selecting the acknowledge button. (ECF No. 14-2 ¶¶ 19–20; ECF No. 14-3 at 15–16 ¶ 8.)

In Maryland, a contract requires (1) offer, (2) acceptance by another, and (3) consideration. *Cochran v. Norkunas*, 919 A.2d 700, 713 (Md. 2007). In this case, the Defendant offered the Plaintiff the Arbitration Agreement through its training website. The Plaintiff accepted when she selected the acknowledge button and did not send an email in accordance with the opt-out instructions in the Arbitration Agreement. (ECF No. 14-4; ECF No. 14-5; ECF No. 14-3 at 15–16 ¶ 8.) Though Plaintiff states that "[she] believe[s] [she] opted out from the arbitration agreement, (ECF No. 17-2 ¶ 6), she does not allege to have taken any steps to opt-out of the Arbitration Agreement, let alone show any facts demonstrating that she opted-out in accordance with the Arbitration Agreement. (*See generally* ECF No. 17-1.) Plaintiff also contends that she did not accept because there was never any electronic signature. (ECF No. 17-1 at 16.) Yet, the agreement clearly states "that clicking on the 'Acknowledge' button is as legally binding as an ink signature." (ECF No.14-4.) Therefore, that there is no physical

electronic signature is irrelevant. Lastly, Plaintiff argues that she had no choice but to accept the agreement because there was no "do not agree" option. (ECF No. 17-1 at 7.) This ignores the ability to abstain by either selecting the "cancel" button or sending an email to EmployeeArbitrationOptOut@hcr-manorcare.com within fourteen days of selecting the acknowledge button. (*See* ECF No. 14-4; ECF 14-3 at 15–16 ¶ 8.)

Finally, Plaintiff alleges that the Defendant did not have adequate consideration because they retained the right to unilaterally modify the agreement at any time (ECF No. 17-1 at 16.) However, the plain language of the agreement reveals the contrary: "Notwithstanding any contrary language, if any, in any EMPLOYER policy or Handbook, this Agreement may not be modified or terminated absent a writing sign (electronically or otherwise) by both parties." (ECF No. 14-3 at 16 ¶ 9.) This language articulates that any modification to the agreement requires mutual consent. Furthermore, mutual agreements to arbitrate form adequate consideration. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate between an employer and an employee constitutes sufficient consideration for their arbitration agreement."). Lastly, previous courts—though not in this circuit or state—have upheld this same Arbitration Agreement. *See Brown v. Heartland Emp't Servs., LLC*, No. 19-11603, 2020 U.S. Dist. LEXIS 88951 (E.D. Mich. May 19, 2020); *Byrne v. Heartland Emp't Servs., LLC*, No. 22-cv-01581-BLF, 2022 U.S. Dist. LEXIS 225425 (N.D. Cal. Dec. 14, 2022).

The FAA permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is

at issue." *Concepcion*, 563 U.S. at 364 (internal citation omitted). Ngamby offers a handful of casual contract defenses: fraud, mutual mistake, and capacity to understand, which are not sufficient on the alleged facts to negate the Arbitration Agreement. While each defense, if sufficiently alleged, would provide an adequate defense to a contract, the facts as alleged by Ngamby do not support the application of these defenses.

First, Ngamby insists that she could not understand the Arbitration Agreement because she grew up in Cameroon speaking French, only learning English as a second language. (ECF No. 17-1 at 15; ECF No. 17-2 ¶¶ 2–3.) However, there remains a presumption that someone has read and understood an agreement if they have signed and agreed to it. *See Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 556 (Md. 2006)*; Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 413 (D. Md. 2018). Given the facts of this case, this presumption should not be rebutted. Even if the agreement was difficult to understand, the slideshow gave a basic understanding such that someone with a "working knowledge of English" (ECF No. 17-1 at 15) would have been on notice to ask for further assistance in understanding the agreement, if needed. Despite being allowed as much time as she desired to review the agreement (ECF No. 14-2), Ngamby never alleges to have attempted to discuss the contract with a translator or request a translated version of the agreement. (*See* ECF No. 17-1.) Accepting a lack of capacity defense from Ngamby, who did not even try to better understand the contract before signing, would result in needless uncertainty in the contracting process, particularly for those whose first language is not English. *See McGrath v. Peterson*, 96 A. 551, 553 (1916) ("It would lead to startling results if a person, who executes without coercion or undue persuasion, a solemn release under seal, can subsequently impeach it on the ground of his own carelessness

though at the very time of its execution he might, had he seen fit, have advised himself fully as to the nature and legal effect of the act he was doing.") (emphasis in original). Thus, Ngamby's lack of capacity argument does not provide an adequate defense to her acceptance of the Arbitration Agreement.

Secondly, Ngamby alleges fraud and mutual mistake, but she does so by making largely conclusory statements rather than factual assertions. The most relevant allegation of mutual mistake pertains to the use of the word "Company" in the preamble of the contract, which is never defined. (ECF 17-2 ¶ 22.) However, as discussed in more detail in the following section, this singular undefined use of the word Company does not negate the rest of the agreement which uses the defined term Employer that clearly includes Manor Care of Potomac. Separately, the only contention for a claim of fraud arises from the labeling of the website with the Arbitration Agreement as a "training platform." (ECF No. 17-1 at 17.) Ngamby does not expound on how this label constitutes fraud, but importantly neglects the fact that the relevant module was titled "Mutual Agreement to Arbitrate Claims" (ECF No. 14-2 ¶ 8), which eliminates any intent to deceive found in labeling the website as a "training platform."

Given Ngamby's failed defenses, Ngamby accepted the Arbitration Agreement to make a contract. This agreement "applies to any and all disputes, past, present, or future, that may arise between Employee and EMPLOYER . . . arising out of or related to Employee's application for employment, employment, and/or separation of employment with EMPLOYER[.]" (ECF No. 14-3 at 13 ¶ 1.) The covered claims include "termination, discrimination, harassment, [and] retaliation[,]" (*Id.* at 13 ¶ 1), which are nearly identical to Ngamby's Complaint "based on national origin discrimination, retaliation, and harassment."

(ECF No. 1 ¶ 1.) The only remaining question as to the applicability of the Arbitration Agreement is whether the Defendant is a party to the Agreement.

### III. This Matter Will Be STAYED While the Parties Litigate Their Claims and Defenses Against Each Other Before an Arbitrator.

Because the Court concludes that the arbitration agreement is valid and enforceable, the Court also must stay the matter. *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration)); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[T]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." (quoting 9 U.S.C. § 3)).

Accordingly, Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings (ECF No. 14) is GRANTED and the proceedings will be STAYED.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings (ECF No. 14) is GRANTED.

A separate Order follows.

Date: June 14, 2024

                                      /s/
                                      Richard D. Bennett
                                      United States Senior District Judge